Raube, by Guardian, Plaintiff, vs. Christenson and others, Defendants.   [Two appeals.]

*May 6—June 1, 1955.*

For the plaintiff there was a brief and oral argument by *John J. Schneider,* attorney, and *George J. Laird* of counsel, both of Fond du Lac.

For the defendants Milwaukee Automobile Insurance Company and Fond du Lac county, there was a brief by *F. W. Cosgrove,* attorney, and *S. Richard Heath* of counsel, both of Fond du Lac, and oral argument by *Mr. Cosgrove* and *Mr. Heath,* and by *Mr. Eugene F. McEssey,* district attorney.

STEINLE, J. It is uncontradicted of record that the injuries were sustained on January 25, 1951, and that on February 24, 1951, on plaintiff's behalf, a verified notice of claim against Fond du Lac county was served on the county clerk. The complaint was served on October 17, 1951. The named defendants were L. R. Christenson and Fond du Lac

county. At a meeting of the annual session of the county board, held November 13, 1951, the county board disallowed the claim of the plaintiff. On August 26, 1952, the amended summons and complaint were served. It was then that Northwestern National Casualty Company, John H. Bottkol, and Milwaukee Automobile Insurance Company were included as additional party defendants. It appears from an affidavit of record filed on behalf of the plaintiff that a meeting of the county board was held on April 17 and 18, 1951. However, it was not established that the county clerk presented the claim to the board at that time. In another filed affidavit there is allegation, on information and belief, that the claim was presented by the county clerk to the county board on August 23, 1951. In that affidavit there is also a statement that one of the counsel for plaintiff had entered into an agreement with the district attorney representing Fond du Lac county that the case could be placed on the court's calendar for trial at the November term of court. It was further stated that on the opening day of the court term, November 5, 1951, the district attorney consented and agreed that the summons and complaint served on October 17, 1951, were to stand as though timely served, and that the case could be calendared for trial.

In determining the motion for summary judgment to dismiss Fond du Lac county as a party defendant, the court held that the service of the summons and complaint on October 17, 1951, was premature; that since the amended summons and complaint had not been served within six months from the date of disallowance of the claim as prescribed by statute, the court was without jurisdiction to entertain the action; that the district attorney was without power to waive the statutory requirements in regard to instituting and maintaining the action; and that the county is not estopped from challenging the validity of plaintiff's procedure in these respects.

In denying the application for summary judgment of dismissal of the complaint against John H. Bottkol, the court pointed out that an official may be liable for negligent acts even though the municipality employing him cannot be held liable, and that as to the alleged negligence of this defendant, questions of fact are presented which must be determined at a trial. In overruling the motion for summary judgment to dismiss the Milwaukee Automobile Insurance Company as a defendant, the court in its written decision observed that: (a) The insurance company under the terms and conditions of the policy is duty bound to defend the action with reference to the county and its employees, whether the cause of action is valid or not; (b) that the company in its policy contract had agreed that it would set up no defense except such as would be valid or legal in case the insured were an individual or a private corporation; (c) that under allegations in the amended complaint there are facts which will of necessity have to be determined.

The legislature has prescribed precise procedure for asserting claims against a county and for instituting actions thereon. Sec. 59.76, Stats., provides in part:

"(1) No action shall be brought or maintained against a county upon *any* account, demand, or *cause of action* when the only relief demandable is a *judgment for money, . . .* unless the county board shall consent and agree to the institution of such action, or unless such claim shall have been duly presented to such board and they shall have failed to act upon the same within the time fixed by law. . . .

"(2) The decision of the county board disallowing in whole or in part any claim of any person shall be final and a bar to any action founded thereon, except as provided in subsection (1), unless an action be brought to recover against the county within six months after such disallowance. *Failure to allow a claim before the adjournment of the next annual session of the board after the claim is filed shall be deemed a disallowance.*" (Italics supplied.)

Sec. 59.77, Stats., provides in part:

"(1) Every person . . . having any such claim against any county shall:

"(a) Make a statement thereof in writing, setting forth the nature of his claim and the facts upon which it is founded, . . .

"(b) Such statement shall be filed with the county clerk; and the county board may in its discretion require that all or certain types of such statements shall be verified by the affidavit of the claimant, his agent, or attorney; and no such claim against any county shall be acted upon or considered by any county board unless such statement is made and filed pursuant to this section."

Sec. 85.095, Stats., deals with motor-vehicle accidents and state and municipal liability arising from such accidents. This section provides in part:

"(1) (a) 'Municipality' means . . . any county. . . .

"(1) (b) 'Governing body' means . . . county . . . board. . . .

"(2) Any person, . . . suffering any damage proximately resulting from the negligent operation of a motor vehicle owned and operated by any municipality, and which damage is occasioned by the operation of such motor vehicle in the performance of its business, may file a claim therefor against such municipality and the governing body thereof shall have the right to allow, compromise, settle, and pay the same.

"(3) The manner and form of and the place for filing claims shall be: . . .

"(b) If against any county, as provided in sections 59.76 and 59.77 (1), with the county clerk. . . .

"(4) *Failure of the governing body to pass upon the claim within sixty days after presentation shall constitute a disallowance.* Disallowance by the governing body shall bar any action founded on the claim unless brought within six months after disallowance. . . ." (Italics supplied.)

Sec. 59.76, Stats., was in effect before sec. 85.095 was enacted. With reference to claims arising from the negligent operation of automobiles owned and operated by a county,

the procedure prescribed in sec. 85.095 is applicable. The failure of the county board to pass upon claims when properly presented, shall within sixty days after presentation constitute a disallowance. Sec. 85.095 (4).

The plaintiff in her complaint alleges that a maintenance crew employed by the county under the supervision of the highway commissioner, John H. Bottkol, negligently covered completely and obliterated with plowed ice and snow the otherwise duly and properly posted stop sign at the intersection in question; that Fond du Lac county and said highway commissioner knew, or reasonably should have known, in the performance of their duties, that the stop sign had been so obliterated and covered; that this condition had existed for a period in excess of three weeks prior to January 25, 1951. No other item of negligence is alleged against the county and the highway commissioner in the complaint. It is further asserted that a claim setting forth such cause of action had been properly filed.

Included in the policy of insurance are the following agreements:

"*Coverage—Bodily Injury Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance, or *use of the automobile.*" (Italics supplied.)

"*Indorsement.* In consideration of the premium at which this policy is written, the coverage of the within policy is hereby extended to cover the operation of the insured automobiles, trucks, and tractors while pushing, pulling, or otherwise propelling any snowplow, road grader, or other highway machinery, and/or equipment, anything in the policy to the contrary notwithstanding."

Plaintiff contends that the alleged negligence of the county and its highway commissioner as specified in the complaint

constitutes a cause of action "growing out of the use of automobiles," and that this cause of action is within the coverage of the insurance policy with respect to the language "arising out of the use" of the insured's vehicles. The plaintiff maintains further that such cause of action is within the purview of motor-vehicle accidents referred to in sec. 85.095, Stats., and that this action was properly and timely commenced in accordance with provisions of that statute. These contentions raise the question as to whether a sufficient causal relationship existed between the use of the vehicles by the maintenance crew in projecting snow and ice over the stop sign and the injuries sustained by the plaintiff, so as to impose liability on the county for negligent use of its vehicles and to obligate the insurance carrier for such negligence under the terms of the policy.

It does not appear of record that any of the county's motor vehicles were in the vicinity of the intersection when the collision occurred. The precise time when the snow and ice were projected so as to cover the stop sign, is not indicated. The complaint reveals that the condition had existed for at least three weeks. In adverse examination the defendant Bottkol testified that he could not with certainty state that the stop sign was legible for a month before the accident. There are other sworn statements of record that the condition existed from ten days to three weeks.

The gravamen of the complaint is that the county, through its employees, covered the sign with snow and ice thereby rendering it obscure and not visible as a warning to approaching motorists. It is charged that the county's agents or servants knew, or ought to have known, of the condition because it had existed for a considerable period of time. We fail to perceive any reasonable connection between the use of any vehicles which projected the ice and snow to the vicinity of the sign and the injuries sustained by the plaintiff. The use of the vehicles was not reasonably incident to or associ-

ated with the collision. It cannot be said that the injuries were the proximate result of the use of the vehicles, or that such use was a substantial factor in causing the injuries. The plaintiff's injuries may have been caused by virtue of Mr. Christenson's inability to have seen the stop sign because it was covered with snow and ice. However, the use of the vehicles which placed the ice and snow over the sign was not the cause of the injuries. The cause may have been in the action of the county's employees in placing the snow and ice over the sign or in not removing it. In *United States Fidelity & Guaranty Co. v. Breslin* (1932), 243 Ky. 734, 49 S. W. (2d) 1011, a pedestrian fell on a sidewalk as a result of a dangerous condition created by sand and gravel which fell from a truck. The court found that the injury was not one caused by an automobile but was caused by a fall upon the street. The court said (p. 738):

"The automobile insurance covered injuries resulting from accidents by automobile. But it did not cover an injury which resulted from a condition created incidentally by the use of the automobile. The condition could have been created by other means. It might as well be said that a person falling into an excavation was injured by an automobile because the excavated material had been hauled away by the automobile."

In *Stammer v. Kitzmiller* (1937), 226 Wis. 348, 276 N. W. 629, the policy afforded coverage not only as to *use,* operation, and maintenance of the insured vehicle but also as to transportation of goods, *loading,* and *unloading* therefrom,—an additional risk. An employee was using the assured's truck to deliver beer to a tavern. He parked the truck along the curb, got out, and opened a hatchway in the sidewalk. He removed a barrel of beer from the truck, set it down, and then lifted the barrel and placed it through the hatchway into the basement of the tavern. He entered the tavern, and while he was there, a pedestrian fell into the open hatchway which had been left unguarded by the assured's

employee. It was claimed that liability attached to the assured for the reason that the injuries were sustained while the truck was being unloaded. This court said (pp. 352, 353):

"When the goods have been taken off the automobile and have actually come to rest; when the automobile itself is no longer connected with the process of unloading; and when the material which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be *no longer in use*. . . . While the open hatchway may have been a convenience in the process of further delivery of the goods, it was not, under the facts with which we are dealing, included in the process of unloading the truck." (Italics supplied.)

In the facts of that case the truck had come to rest, and the court found that it was no longer in use at the time when the intervening cause,—the opening of the hatchway,—had arisen. In the case at bar the truck was not in use at the time and place when the plaintiff was injured. The fact that the snow and ice had been permitted to remain over the sign after it had been placed there by the county's vehicles may have been a cause of the collision. However, the failure to remove the snow and ice was in nowise connected with the use of the vehicles.

In *Luchte v. State Automobile Mut. Ins. Co.* (1935), 50 Ohio App. 5, 197 N. E. 421, the insurance policy covered *use,* ownership, and maintenance of a truck. The assured's truck dumped a pile of coal in a street and left it unprotected without lights or warning, contrary to law. The truck moved away from the vicinity of this scene. The plaintiff's decedent ran into this coal pile in the early morning and was killed. The court held that no liability existed under the ownership, maintenance, and *use* clause of the policy.

In *Caron v. American Motorists Ins. Co.* (1931), 277 Mass. 156, 178 N. E. 286, the policy contained a maintenance

and *use* clause. The court held that the policy did not cover a situation where a pedestrian was injured when falling upon a piece of ice which had fallen from the insured's delivery truck and which was not in motion at the time.

In the case at bar the indorsement on the policy provides for coverage of automobiles, trucks, and tractors *while* pushing, pulling, or otherwise propelling any snowplow, road grader, or other highway machinery or equipment. The word "while" clearly means "during the period" when actually engaged in such function. In *Chilcote v. San Bernardino County* (1933), 218 Cal. 444, 23 Pac. (2d) 748, the court in construing the term "operation of a motor vehicle by county employees" held that the vehicle must be in active exercise of some specific function by performing work or producing effects at the time and place that the injury is inflicted. We are of the opinion that in construing the word "use" in the policy contract before us, similar interpretation must be given.

Since it cannot be held that the plaintiff's alleged cause of action grew out of the use of the county's vehicles, the provisions of sec. 85.095, Stats., are not applicable to the plaintiff's claim. An action such as commenced by the plaintiff is controlled by provisions in secs. 59.76 and 59.77. The disallowance of the claim by the county before the adjournment of the annual session on November 13, 1951, was in accordance with the applicable statutory provision in sec. 59.76.

Strict compliance with provisions of secs. 59.76 and 59.77, Stats., is required. Disallowance of the claim by the county board was a condition precedent to the commencement of the action. Since the summons and complaint were served before the county board within the time permitted to it by statute disallowed the claim, it is plain that the action was prematurely brought and cannot be maintained. The amendment of the summons and complaint at a time later than six months after disallowance by the county board was of no efficacy.

The agreements entered into by the district attorney with plaintiff's counsel regarding waiver of provisions in sec. 59.76, Stats., were invalid. A county cannot waive the statutory requirements as to the filing of claims against a county. *Maynard v. De Vries* (1937), 224 Wis. 224, 228, 272 N. W. 27. Obviously a representative of the county is not empowered to grant a privilege which the county itself under the law cannot extend. In *Marathon County v. Industrial Comm.* (1935), 218 Wis. 275, 260 N. W. 641, it was held that a county officer, acting without authority of law, cannot bind the county by his unauthorized acts. In 20 C. J. S., Counties, p. 1007, sec. 174, it is said that: ". . . persons dealing with officers or agents of counties are bound to ascertain the limits of their authority or power as fixed by statutory or organic law, and are chargeable with knowledge of such limits. No estoppel can be created by the acts of such agents or officers in excess of their statutory or constitutional powers, . . ." Since the district attorney of Fond du Lac county acted in excess of his powers, the county is not to be estopped from challenging the plaintiff's procedure with reference to the action that she has brought.

It being clear that the plaintiff's cause of action is not one growing out of the use of motor vehicles by Fond du Lac county, the summary judgment rendered by the trial court dismissing the complaint against Fond du Lac county must be sustained for the reason of the failure of compliance by the plaintiff with provisions of sec. 59.76, Stats. The order denying the motion for summary judgment of dismissal of the complaint as to Milwaukee Automobile Insurance Company must be reversed for the reason that the agreements in the policy did not cover a claim such as is asserted by the plaintiff and which did not arise from the use of the county's vehicles.

*By the Court.*—The summary judgment dismissing the complaint as to Fond du Lac county is affirmed. The order

denying the motion for summary judgment to dismiss the complaint as to Milwaukee Automobile Insurance Company is reversed, and the cause remanded with direction to enter judgment dismissing the complaint as to Milwaukee Automobile Insurance Company upon its merits.