McMann, Appellant, vs. Faulstich, Defendant: Farmers Mutual Automobile Insurance Company, Respondent.

*February 8—April 3, 1951.*

For the appellant there was a brief by *William Kay,* attorney, and *Sydney C. Charney* and *Charles H. Galin* of counsel, all of Milwaukee, and oral argument by *Mr. Galin.*

For the respondent there was a brief by *Hannan, Johnson & Goldschmidt,* attorneys, and *Herbert L. Wible* of counsel, all of Milwaukee, and oral argument by *Mr. Wible.*

MARTIN, J.   This is an action to recover damages for personal injuries suffered by the plaintiff as a result of being struck by a truck driven by the defendant, Fred Faulstich, with the permission of Fred Teckam, the owner. This truck was then covered by a policy of public-liability insurance which had been issued previously by the defendant, Farmers Mutual Automobile Insurance Company, a Wisconsin corporation, to Fred Teckam.

As a defense the defendant insurance company relies on a provision in the policy under the heading "Exclusions" which provides as follows:·

"This policy does not apply: . . .

"(b) under coverages A, B, and C, (1) . . . (2) to bodily injury to or sickness, disease, or death of any employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance, or repair of the automobile."

The facts are: Plaintiff McMann and the defendant Faulstich were, respectively, a barber and welder by trade, and both resided in Milwaukee county.

Fred Teckam, the named insured and father-in-law of defendant Faulstich, is a farmer who was along in years and whose health was impaired. He owned a farm near Middleton, Wisconsin. Because of his impaired health, the management of the farm was left in the care of his son, Gilsie Teckam.

Plaintiff and defendant Faulstich were guests or visitors on said farm on September 2, 1946. Plaintiff had been at the Teckam farm ten or fifteen times, or more, previous to the day of the accident and had not helped do any farm work.

After dinner on the farm on the above date, Gilsie Teckam said: "Now we had our dinner. Let us go out and get some dinner for the cows"—meaning "to get a load of corn for the cows." The plaintiff understood from this that Gilsie was asking him and the others at the dinner table "to help him, to give him a helping hand, and the old man is quite ill you know. He can't navigate around as well as we did, and I expected him, that he meant that we should help him." Everyone present, including the plaintiff, signified his willingness to help Gilsie by saying "Okay" to his request for help and then got up, went out and got on the truck. The plaintiff McMann, defendant Faulstich, and his two teen-aged daughters and a niece, all went to the cornfield to help.

At the time of the accident, defendant Faulstich was operating the truck up and down the cornfield, Gilsie was cutting

the corn, and the others were picking it up and loading it onto the truck. The plaintiff was bending down to pick up corn when the truck backed into him, causing his injuries. Previous to operating the truck that day, defendant Faulstich told his father-in-law, the owner of the truck and the farm, that he was going to drive the truck, and his father-in-law said that it was all right for him to do so.

At the time that the plaintiff sustained his injury, he and the defendant Faulstich were voluntary helpers of Fred Teckam, the owner of the farm and truck involved and the named insured in the policy affording coverage on the truck.

There is no allegation and no proof that the plaintiff was the employee of defendant Faulstich.

The policy of insurance herein provided that the named insured was Fred Teckam. It insured him "subject to the limits of liability, exclusions, conditions, and other terms of this policy" by agreeing (Coverages A and B) "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, because of bodily injury, . . . sustained by any person . . . caused by accident, and arising out of the ownership, maintenance, or use of the automobile."

Pursuant to sec. 204.30 (3), Stats., it contained the following definition of "insured:"

"The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured. . . ."

The court in construing this section said in *Sandstrom v. Estate of Clausen* (1951), 258 Wis. 534, 536, 46 N. W. (2d) 831:

"Sec. 204.30 (3), Stats., has remained unchanged since 1943. Numerous cases have come before us requiring its interpretation and have resulted in decisions which it now seems impossible to reconcile. In such a situation we consider it advisable to re-examine the statute with as little bias as possible because of what we have said on other occasions. So viewed, and in the light of our experience with many cases which have presented various aspects of the problems which the statute is designed to treat, we conclude that by the purchase and sale of a policy such as the one described in the foregoing statement of facts the insurer and the named insured have agreed that the latter shall not have insurance against claims brought by his own employees against him. By the 'Definition of "Insured" ' in the policy and by the omnibus coverage of sec. 204.30 (3), incorporated in the policy by law, the indemnity which the named insured has is extended to apply in the same manner and under the same provisions as it is applicable to the named assured to those who operate the automobile with the named assured's consent, and also to those who are legally responsible for its operation, provided that operation is with the consent of the named assured. That is, assuming such consent, just as the named assured has no insurance protection if the claim is by his own employee but is protected against the claims of all others, so an additional insured has no protection when the claim is by his employee but is protected against the claims of persons not so related to him, no matter who else may be the employer of the claimant.

"Insurance companies have consistently attempted to limit their liability by proposing that if any possible party against whom the injured person might have made a claim was such person's employer, then the actual defendant, regardless of such relationship, is excluded from coverage. We do not think that this was the intent of the legislature when it enacted sec. 204.30 (3), Stats., nor that such a result is required by the language of that section.

". . . The lack of coverage accorded the actual employer of the plaintiff cannot be carried over to withdraw protection when the claim is made by the employee of any other than the party against whom the action is brought."

From the above, it follows that the exclusion clause hereinbefore set forth would exclude an employee of Fred Teckam from the protection of the insurance policy here in question. However, Fred Teckam is not a party defendant to this action. It is therefore unnecessary to determine the relationship existing between Fred Teckam and plaintiff. The exclusion clause does not exclude the claim of plaintiff against defendant Faulstich. No employer-employee relationship exists between these latter parties. The defendant, Farmers Mutual Automobile Insurance Company, under sec. 204.30 (3), Stats., is liable for any negligence of the defendant Faulstich in the operation of the truck of the named insured at the time of the accident.

*By the Court.*—Judgment and order reversed, and cause remanded with instructions to reinstate plaintiff's complaint and grant a new trial.