**TRAVELERS INSURANCE COMPANY,**
**Plaintiff,**

v.

**AMERICAN FIDELITY & CASUALTY CO., Defendant and Third Party Plaintiff (The TEXAS ° COMPANY and George R. Gilbert, Third Party Defendants).**

Civ. No. 2784.

United States District Court
D. Minnesota
Third Division.
June 30, 1958.

Thomas J. Spence, St. Paul, Minn., Kenneth W. Green, Minneapolis, Minn.; for plaintiff.

Mordaunt, Walstad & Madsen, by J. H. Mordaunt, Minneapolis, Minn., for defendant and third party plaintiff.

Thomas . J. Spence, St. Paul, Minn., for third party defendants.

DONOVAN, District Judge.

This civil case set for hearing and tried at the November 1957 Term was submitted for decision on April 10, 1958. Plaintiff's brief was long past due, delaying consideration of this case.

Travelers Insurance Company (hereinafter referred to as Travelers) brought the action, as subrogee of The Texas Company (hereinafter referred to as Texas) 'and George R. Gilbert, to enforce as additional insureds, an automobile indemnity policy issued to Charles and Elias Hildenbrand, doing business as the Advance Express Company (hereinafter referred to as Advance), by American Fidelity & Casualty Company (hereinafter referred to as American). Texas ,and Gilbert were made third party defendants at the instance of American.

A recital of the undisputed facts may be helpful. Advance maintains its principal office at Milwaukee, Wisconsin, and carries on a freight transport business in Illinois, Wisconsin and Minnesota. It has a freight terminal in St. Paul, Minnesota, where Benedict Schneider is employed to make pick-up and delivery of freight in the area of Minneapolis and St. Paul.

On October 10, 1949, Schneider was directed to make delivery, by tractor and semi-trailer covered by American's policy, of certain freight consigned to

Texas, at the latter's St. Paul freight receiving yard.

Upon arrival at the yard, Schneider was directed by Gilbert (employed as a warehouseman by Texas) to back the semi-trailer on a driveway for unloading. In the process of unloading, Schneider sustained severe injuries through the negligence of Gilbert. Schneider collected benefits under the Minnesota Workmen's Compensation Act, M.S.A. § 176.01 et seq., and subsequently sued Texas and Gilbert in a Minnesota District Court where he recovered a judgment. Schneider v. Texas Company, 244 Minn. 131, 69 N.W.2d 329. American was tendered the defense of this common law action and tender was refused.

Under the terms of a comprehensive, general liability policy of insurance issued to Texas, Travelers satisfied the judgment, and in this action seeks reimbursement from American. Travelers contends that American's policy covered the injury to Schneider; that under the applicable law of Wisconsin (hereinafter referred to as § 204.30)[1], American's policy is deemed to contain an omnibus coverage provision extending coverage to persons operating or using the insured vehicle with the permission of the named insured and to persons rendered liable by reason of such permissive operation or use, hence that Texas and Gilbert are additional insureds under that policy; that, as between Travelers and American, the latter was the "primary" insurer charged with the duty under its policy to defend and indemnify Texas and Gilbert for any judgment rendered against them; and that Travelers, having defended and satisfied Schneider's judgment, is entitled to recover the amounts expended in defense of Schneider's suit and in satisfaction of the judgment.

American contends that its policy is governed by Minnesota law which does not compel omnibus coverage, and that no liability could arise under the circumstances of this case because: (a) by the terms of its policy American undertook to defend and indemnify only the named insured; (b) Schneider's injuries did not come under policy coverage in that they did not arise "by reason of the ownership, maintenance or use" of the insured vehicle; and (c) the policy expressly excludes coverage for liability to any employee of the named insured.

### 1. What Law Governs American's Policy?

American's policy is a "rewrite" of a policy issued in 1937 to Advance by the Central Surety & Insurance Corporation of Kansas City (hereinafter referred to as Central). The Central policy was

---

1. Wisconsin Statute § 204.30:
   "Accident insurance, highway traffic, policy provisions
   "(1) No policy of insurance against loss or damage resulting from accident or injury to a person, and for which the insured is liable, or against loss or damage to property caused by animals or by any motor vehicle, and for which the insured is liable, shall be issued or delivered in this state unless it shall contain * * *.
   "(2) * * *
   "(3) No such policy shall be issued or delivered in this state to the owner of a motor vehicle, unless it contains a provision reading substantially as follows: The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named assured, to any person or persons while riding in or operating any automobile described in this policy when such automobile is being used for purposes and in the manner described in said policy. Such indemnity shall also extend to any person, firm or corporation legally responsible for the operation of such automobile. The insurance hereby afforded shall not apply unless the riding, use or operation above referred to be with the permission of the assured named in this policy, or if such assured is an individual, with the permission of an adult member of such assured's household other than a chauffeur or domestic servant; provided, however, that no insurance afforded by this paragraph shall apply to a public automobile garage or an automobile repair shop, sales agency, service station and/or the agents or employés thereof. In the event an automobile covered by this policy is sold or transferred the purchaser or transferee shall not be an additional insured without consent of the company, indorsed hereon."

solicited in Milwaukee by the State Insurance Underwriters, Inc., of Milwaukee (hereinafter referred to as State.) When American was licensed to conduct the business of insurance in Wisconsin in 1939, it issued the policy here involved to Advance. Where or by whom this policy was solicited does not appear, but, in absence of a contrary showing, the court presumes American's policy, like Central's, was solicited in Milwaukee by State. Both policies were provided by the Chicago office of Markel Service, Inc. American's policy provided that the insurer would not become bound until the policy was countersigned by an authorized representative of the insurer. The policy was countersigned at Milwaukee by Elmer H. Kambe, an official of State, as the duly authorized representative of American, and delivered in that city to the insured.

■ Under Minnesota law the pertinent statutory law of the place where an insurance policy is issued becomes a part of the contract of insurance. Anderson v. State Farm Mutual Automobile Ins. Co., 222 Minn. 428, 24 N.W.2d 836; Onstad v. State Mutual Life Assur. Co., 226 Minn. 60, 32 N.W.2d 185. Where the place of issuance is a sister state, so much of these statutes as in the determination of the forum provide substantive rights, as opposed to matters of remedy or procedure, will be enforced in Minnesota when not contrary to its public policy. Kertson v. Johnson, 185 Minn. 591, 242 N.W. 329, 85 A.L.R. 1; Anderson v. State Farm Mutual Automobile Ins. Co., supra.

■ American's policy was issued in Wisconsin. In that state the last act necessary to the creation of an enforceable contract was performed by way of countersignature. Onstad v. State Mut. Life Assur. Co., supra; Combined Insurance Co. of America v. Bode, 247 Minn. 458, 77 N.W.2d 533. Under the authorities heretofore cited, Wisconsin law governs both the construction of the policy and the determination of the extent of the insurer's obligation under the policy.

■■ Manifestly, Wisconsin Statute § 204.30(3) creates substantive rights in the additional insureds and substantive obligations or liabilities in the insurer. Policies issued or delivered in Wisconsin are deemed to contain the omnibus coverage provision required by the statute whether actually written therein or not. Stone v. Inter-State Exchange, 200 Wis. 585, 229 N.W. 26; Drewek v. Milwaukee Automobile Ins. Co., 207 Wis. 445, 240 N.W. 881; Zippel v. Country Gardens, Inc., 262 Wis. 567, 55 N.W.2d 903. Although Minnesota law does not require automobile insurance policies issued in this state to contain an omnibus coverage provision, Wolf v. Employers Mutual Liability Ins. Co., D.C.Minn., 40 F.Supp. 635, it recognizes such provision as valid and enforceable. Peterson v. Maloney, 181 Minn. 437, 232 N.W. 790; Schultz v. Krosch, 204 Minn. 585, 284 N.W. 782.

In support of American's contention that Minnesota law controls its obligations under the policy, it argues that:

(a) The law of the place of the accident determines the rights, duties and liabilities of the parties.[2] This view confuses the conflict of laws rule pertaining to liability for tort with that pertaining to obligation under contract, the latter of which has been applied here. Anderson v. State Farm Mutual Automobile Ins. Co., supra; Levy v. Daniels' U-Drive Auto Renting Co., 108 Conn. 333, 143 A. 163, 61 A.L.R. 846; General Accident Fire & Life Assur. Corp. v. Ganser, 2 Misc.2d 18, 150 N.Y.S.2d 705; New Amsterdam Casualty Co. v. Stecker, 1 A.D.2d 629, 152 N.Y.S.2d 879; Restatement of Conflict of Laws, § 346.

■ (b) Since the policy contemplated performance in several states, it should be presumed that the parties intended the law of the place of performance to control their contract with the result that Minnesota law governs occurrences in Minnesota, Wisconsin law

2. American relies on Scholle v. Home Mutual Casualty Co., 273 Wis. 387, 78 N.W.2d 902.

occurrences in Wisconsin, and so on. The intention of the parties as to which law shall govern their contract is, ordinarily, decisive, the conflict of laws rules in this regard being, for the most part, presumptions employed where a clear expression of intention is lacking. Thomson-Houston Electric Co. v. Palmer, 52 Minn. 174, 53 N.W. 1137; Mueller v. Ober, 172 Minn. 349, 215 N.W. 781. However, the power of the parties to choose the governing law is not without limits. That chosen must be the law of a place which has a substantial connection with the contract, and in exercising their choice, the parties must act in good faith and without an intent to evade the law. Thomson-Houston Electric Co. v. Palmer, supra; Combined Ins. Co. of America v. Bode, supra. This latter limitation looms large in contracts of insurance, for as stated in Onstad v. State Mut. Life Assur. Co., supra [226 Minn. 60, 32 N.W.2d 187]:

"Defendant accepted the statutory terms on which it could conduct its insurance business in this state. It maintains an office in Minnesota and solicits business in this state. The insured was so solicited. The company could not make an insurance contract in this state contrary to its public policy, as announced in our statutes * * *. Those statutes became a condition of doing business here and a part of any contract of insurance made by defendant in Minnesota. When an insurance company comes into Minnesota to do business, agrees to abide by its laws, and, while exercising that privilege, solicits business therein, it will not be allowed to evade our laws by a statement in the contract which, in effect, attempts to provide that the contract shall be deemed to be made in another state. (Citing cases.)

"The facts in this case show that even though defendant may not have intended to be bound by the laws of Minnesota, it, in fact, did so bind itself, because the issuance and delivery of the policy was actually made in Minnesota. Northwestern Mut. Life Ins. Co. v. McCue, 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419, 38 L.R.A.,N.S., 57."

The court concludes, under Minnesota conflict of laws rules, the law of the state of its issuance governs an insurance contract, and where as a condition of conducting the insurance business in such state, an insurer agrees to abide by its laws thereafter soliciting, issuing and delivering the policy there, the insurer may not adopt as governing the law of another state if the ensuing contract is repugnant to the law of the state of issuance. If, under these circumstances, an insurer is not free to contract with reference to other law, a court may not indulge in presumptions compelling the same offensive result.

■ (c) The law of the place of contracting governs, and by virtue of Minnesota Statutes Annotated, § 60.28, Minnesota is that place. M.S.A. § 60.28 provides:

"Solicitation of certain contracts forbidden

"It shall be unlawful for any person, firm, or corporation to solicit or make, or aid in soliciting or making, any contract of insurance not authorized by the laws of this state. All contracts of insurance on property, lives or interests in this state, shall be deemed to be made in this state."

Assuming, as American contends, this is a case involving an interest in this state, the court proceeds to a consideration of the effect of the statute on the question in issue.

As stated in Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U.S. 143, 150, 54 S.Ct. 634, 636, 78 L.Ed. 1178:

"A legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the

forum, regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment." [3]

But a state's legitimate interest in activities within its borders which are a part of a multistate transaction may be such as to permit regulation consistent with the Fourteenth Amendment which, in effect, alters contractual rights elsewhere validly created. Watson v. Employers Liability Assur. Corp., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74. The interests designed to be protected by Minnesota Statutes Annotated, § 60.28 and related provisions have been stated to be the protection of the people of Minnesota against irresponsible insurance companies, and the compulsion of all insurance companies doing business in the state or taking risks therein to comply with its laws. Seamans v. Christian Bros. Mill Co., 66 Minn. 205, 68 N.W. 1065; Bothwell v. Buckbee, Mears Co., 166 Minn. 285, 207 N.W. 724. Where the contract was made outside the state, its courts, rather than apply a literal construction to the statute, have declined to give the transgressing insurer enforcement of its contract.[4] Ibid.

■ American is licensed in Minnesota, presumably, doing all things necessary to satisfy the state of its financial responsibility. Its policy, as construed under Wisconsin law, does not violate public policy as announced in the Minnesota statutes. Since the statutory purpose and the interests of Minnesota are protected in this case, the court declines to adopt American's proffered construction of § 60.28.

■ As its last argument against applicability of Wisconsin statute § 204.-30(3), American assumes that Wisconsin law governs its policy, but contends that statute has application only to accidents occurring on "public streets or highways", whereas Schneider's misfortune occurred on private property. The argument uses the language of Minnesota Statutes Annotated, § 170.54, which has been given the construction American would have the court place on Wisconsin statute § 204.30(3). Kayser v. Jungbauer, 217 Minn. 140, 14 N.W.2d 337. § 204.30(3) contains no similar terminology. Suffice it to say that § 204.30(3) has been applied where accident occurred on private property. McMann v. Faulstich, 259 Wis. 7, 47 N.W.2d 317.

### 2. Was the Accident Within the Coverage of American's Policy?

■ American undertook to indemnify the named insured against loss from liability from accidental bodily injury arising "by reason of the ownership, maintenance or use" of the insured vehicle when used for "transportation of merchandise for compensation" over designated routes. Section 204.30(3) provides neither more nor less coverage than that extended to the named insured as a general rule. Ainsworth v. Berg, 253 Wis. 438, 34 N.W.2d 790, 35 N.W. 2d 911; Schenke v. State Farm Mut. Auto Ins. Co., 246 Wis. 301, 16 N.W.2d 817. American contends that the injury, which occurred during the unloading of the insured vehicle [5], nevertheless, did not occur when the vehicle was being used within the meaning of the coverage extended as its policy did not contain a clause defining "use" to include "loading" and "unloading"; hence, that the court must conclude an unloading cannot be comprehended in the term "use."

No Wisconsin decision in point has been cited or found.[6] Conceivably, un-

3. See also Turner v. Liberty Mut. Ins. Co., D.C.E.D.N.C., 105 F.Supp. 723, 726.

4. In Ganser v. Fireman's Fund Ins. Co., 34 Minn. 372, 25 N.W. 943, the insured was allowed recovery although the insurance company had failed to comply with the statutes.

5. The facts admit of no dispute on this point.

6. The policies involved in Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629; Fitzgerald v. Milwaukee Automobile Ins. Co., 226 Wis. 520, 277 N.W. 183; Hardware Mut. Cas. Co. v. St. Paul Mercury

loading may not be considered a use of an automobile as such, yet, when a vehicle is normally used to transport freight and is insured as such with policy restrictions on the use as a freight transport, it is a reasonable construction of the policy that the parties intended the term "use" to include loading and unloading, since these activities are essential to the use of the vehicle for the transport of freight.[7] The injury to Schneider arose by reason of a use of the insured vehicle within the policy coverage.

### 3. What is the Effect of the Policy's Employee Exclusion?

■ American's policy covers "(1) Bodily injury or death suffered by any person or persons, other than the insured or his employee, * * *." It further provides:

"(D) This policy does not cover (a) liability of the Assured to any employe of the Assured, or (b) liability assumed or imposed upon the Assured by any workmen's compensation law or agreement; * * *."

In Sandstrom v. Clausen's Estate, 258 Wis. 534, 46 N.W.2d 831, 832, it was said:

"By the 'Definition of "Insured"' in the policy and by the omnibus coverage of sec. 204.30(3), Stats., incorporated in the policy by law, the indemnity which the named insured has is extended to apply in the same manner and under the same provisions as it is applicable to the named assured to those who operate the automobile with the named assured's consent, and also to those who are legally responsible for its operation, provided that operation is with the consent of the named assured. That is, assuming such consent, just as the named assured has no insurance protection if the claim is by his own employee but is protected against the claims of all others, so an additional insured has no protection when the claim is by his employee but is protected against the claims of persons not so related to him, no matter who else may be the employer of the claimant.

"Insurance companies have consistently attempted to limit their liability by proposing that if any possible party against whom the injured person might have made a claim was such person's employer, then the actual defendant, regardless of such relationship, is excluded from coverage. We do not think that this was the intent of the legislature when it enacted sec. 204.30 (3), Stats., nor that such a result is required by the language of that section."[8]

The fact that Schneider was the employee of Advance, the named insured, and, under the terms of the policy, Advance has no insurance protection against a claim by Schneider does not operate to exclude coverage to Texas and Gilbert for a claim by Schneider.

Indem. Co., 264 Wis. 230, 58 N.W.2d 646, contained loading and unloading clauses. The finding of no use within the meaning of the policy in Raube v. Christenson, 270 Wis. 297, 70 N.W.2d 639, on another point, appears to be based upon a conclusion that any possible use of the insured vehicle was not the proximate cause of the accident.

7. See Panhandle Steel Products Co. v. Fidelity Union Cas. Co., Tex.Civ.App., 23 S.W.2d 799; Owens v. Ocean Acc. & Guarantee Corp., 194 Ark. 817, 109 S.W.2d 928; Employers Cas. Co. v. Hicks Rubber Co., Tex.Civ.App., 160 S.W.2d 96, 99, reversed on other grounds Traders & General Ins. Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S.W.2d 142; Oklahoma Farm Bureau Mut. Ins. Co. v. Mouse, Okl., 268 P.2d 886.

Compare: Luchte v. State Auto. Mut. Ins. Co., 50 Ohio App. 5, 197 N.E. 421.

Contra: Kienstra v. Madison County Mut. Automobile Ins. Co., 316 Ill.App. 238, 44 N.E.2d 944.

8. Accord: McMann v. Faulstich, supra; Zippel v. Country Gardens, Inc., supra; Severin v. Luchinske, 271 Wis. 378, 73 N.W.2d 477.

### 4. Upon Which Insurer Does Ultimate Liability Rest?

By its policy[9], Travelers undertook to defend and pay any liability of the insured because of bodily injury sustained by any person and caused by accident. "Insured" is defined to include Texas, and also any of its employees except with respect to the ownership, maintenance or use of automobiles. Consequently, Travelers' policy provided coverage for Texas, but not Gilbert, for liability resulting from Schneider's injuries. American's policy provided coverage for both Texas and Gilbert. Texas' liability upon the judgment was based upon liability of the employer for the negligence of his employee, for satisfaction of which the employer is entitled to a recovery against his employee.[10] As the sole insurer of the employee, Gilbert, ultimate liability rests upon American, and Travelers, as subrogee of the rights of Texas, is entitled to recover the amount of Schneider's judgment from American. United States Fidelity & Guaranty Co. v. Church, D.C.N.D.Cal. S.D., 107 F.Supp. 683; compare Bituminous Cas. Corp. v. Travelers Ins. Co. D.C.Minn., 122 F.Supp. 197.

American insists that the concurrent insurance clause of its policy[11], providing for pro rata distribution of the loss in the proportion of the amount of coverage American's policy provides to that provided by the other insurance, applies here. Travelers' other insurance clause provides that the insurance under its policy for loss arising out of the use of a non-owned automobile is excess insurance over any insurance available to the insured. Further, American was the sole insurer of Gilbert, and as to him no concurrent insurance was in force. United States Fidelity & Guaranty Co. v. Church, supra.

---

9. So far as pertinent, Travelers' policy provides:

"I. Coverage A—Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * including death at any time resulting therefrom, sustained by any person and caused by accident.

"II. Defense, Settlement, Supplementary Payments. As respects the insurance afforded by the other terms of this policy the company shall:

"(a) defend any suit against the insured alleging such injury * * * and seeking damages on account thereof, * * *.

\* \* \* \* \* \* \*

"III. Definition of Insured. The unqualified word 'insured' includes the named insured * * *.

\* \* \* \* \* \* \*

"General Endorsement.

"Such insurance as is afforded by the policy applies subject to the following provisions:

"1. The insurance applies to

\* \* \* \* \* \* \*

"(F) Under coverage A, except with respect to the ownership, maintenance or use of automobiles, * * * any employee of The Texas Company * * * as insured, against whom claim is made or suit is brought alleging liability arising out of the hazards of The Texas Company * * *, and for which The Texas Company * * * is alleged to be jointly liable.

\* \* \* \* \* \* \*

"Conditions

\* \* \* \* \* \* \*

"12. Other Insurance. * * * provided, however, the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise."

10. Minnesota law controls the tort liability of Texas and Gilbert. Under that law a servant is responsible for loss to the master arising out of negligence injuring a third person. Magistad v. Andrew Schoch Grocery Co., 177 Minn. 453, 225 N.W. 287.

11. "Condition (G) Concurrent Insurance. If the Assured, as named in statement I of the Schedule of Statements, carries other insurance, whether or not valid or collectible, not issued by the Company, against loss covered by this Policy, the Assured shall not be entitled to recover from the Company a larger proportion of the entire loss than the proportion that the amount of this Policy bears to the total amount of his insurance against such loss, * * *."

With regard to costs of defense and attorneys' fees, both insurers were obligated to defend Schneider's suit. This obligation was several and not joint; consequently, Travelers, having paid these costs, is not entitled to recover for them against American.

### 5. *The Third Party Action.*

American's action against Texas and Gilbert is based upon the following provision of its policy:

"This insurance is intended solely as an indemnification to the Assured against loss from the causes named and for certain expenses enumerated herein, and it is not intended to be for the benefit of third parties, except as herein specifically set out. Provided, however, that should any law regulating the vehicles insured hereunder require the Company to alter the terms of this policy by endorsement or otherwise so as to make the Company liable for any loss which it would not otherwise be required to pay under the terms of this policy, then the Assured shall reimburse the Company for any and all such loss, cost or expense, paid or incurred by the Company as a result of any such statute or statutory endorsement."

American contends that the loss it is required to pay arises by virtue of § 204.30(3), and that under that section the third party defendants are insureds against whom this policy limitation is enforceable.

American's obligation to extend indemnity to the permissive user and the person legally responsible for such permissive use imposed by § 204.30(3) admits of three exceptions: (1) Non-permissive user; (2) garages, repair shops, etc., and their employees; and (3) a purchaser of the insured vehicle. Any limitation not within these exceptions is void. Narloch v. Church, 234 Wis. 155, 290 N.W. 595; Schenke v. State Farm Mutual Auto Ins. Co., 246 Wis. 301, 16 N.W.2d 817. Assuming the proviso of the limitation applies to § 204.30(3), that is, that this section is a statute regulating a vehicle insured under the policy, the limitation deprives the additional insureds of any and all indemnity, and in so doing fails. While the argument that the statute was intended for the benefit of the public, and not the additional insureds, carries force, it has been answered in the negative with a literal enforcement of the statute in Olander v. Klapprote, 263 Wis. 463, 57 N.W.2d 734.

Plaintiff is entitled to judgment in the amount of $11,000. The third party defendants are entitled to judgment.